LOCKETT *et al. v.* RUMBOUGH *et al.*

(*Circuit Court, W. D. North Carolina.* November, 1889.)

GARNISHMENT—EQUITY—INTERPLEADER.

In attachment and garnishment proceedings, it appeared that the garnishee had funds in his hands, received from defendant, in which the garnishee claimed no individual interest, and which he offered to pay to the party adjudged entitled thereto. Defendant's wife interpleaded, and claimed that the garnishee received the fund under an express trust for her benefit. Plaintiffs claimed a lien by the attachment proceedings on the fund, and alleged that defendant's attempted disposition of it for his wife's benefit was in fraud of creditors. It was not alleged that the garnishee knew of such fraud. *Held,* that the cause would be transferred to equity, to determine the rights of the contesting claimants, and relieve the garnishee.

At Law. Attachment proceedings.

*Moore & Merrick, P. A. Cummings,* and *F. A. Sondley,* for plaintiffs.
*Joseph Adams* and *T. H. Cobb,* for defendants.

DICK, J. This case is one of a number of similar actions brought by creditors of the Warm Springs Company, and the order herein made extends to all the cases now pending in this court. These several actions were brought against the defendants for debts incurred by the Warm Springs Company, and judgments have been rendered for the amounts of such indebtedness. In the course of proceedings the plaintiffs obtained warrants of attachment against the property of Joseph Pettyjohn, upon affidavits alleging that he had assigned and disposed of his property with intent to defraud his creditors. These warrants of attachment were duly served on the respondent M. E. Carter, and he was summoned as garnishee to appear at court and answer upon oath as to what effects he had in his possession belonging to the defendant Pettyjohn. The garnishee, in his answer, set forth the amount of money which he had received from Pettyjohn, and the facts and circumstances which attended the transaction, and expressed his readiness to dispose of the money in his hands under the order of the court; and prayed for indemnity and protection against any personal liability, in law or equity, to any of the rival claimants. Upon proper application Mrs. Louisa B. Pettyjohn and her trustee, A. S. Pannell, were allowed to interplead, and by affidavits set up their claim to the money attached, in the manner and upon the conditions provided by the laws of the state. Counter-affidavits were filed by the plaintiffs, and issues of fact were framed for a trial by jury.

Among other things, the pleadings show the following statements and allegations in relation to the fund in controversy: The defendants Joseph Pettyjohn and his wife, Louisa B. Pettyjohn, purchased a one-third interest in the property of the Warm Springs Company, and executed a mortgage to secure the payment of a balance of purchase money, and expressly stipulated that their interest in any insurance upon the hotel should be paid in discharge of such indebtedness. The hotel was destroyed by fire, and Pettyjohn declined to sign the proof of loss on account of some difficulty which he had with Rumbough and Rollins, and

,the insurance companies refused to pay unless such proof was signed by him. A compromise was made by the partners, and Rumbough and Rollins agreed to settle all disputes and difficulties, and pay to Pettyjohn the sum of $2,500 upon his executing a deed of quitclaim to all interest in the Warm Springs Company. The insurance was adjusted and settled under this compromise, and Pettyjohn executed a power of attorney to M. E. Carter, to receive the agreed sum of $2,500, and pay the money to A. S. Pannell, trustee of the estate of Mrs. Louisa B. Pettyjohn, claiming that the insurance money paid on the hotel property belonged to his said wife.

At this term of the court the issues of fact which had been prepared came on for trial, and a jury was duly impanelled. Upon hearing the pleadings and the argument of counsel, I was of the opinion that the case involved equitable elements that could not be adequately adjusted and determined in an action at law in this court. An order was made to withdraw a juror, and 'to suspend the further proceedings in the action at law until all equitable questions and rights were adjusted and determined in a suit in equity. A further order was made directing the garnishee, M. E. Carter, to hold the fund in his hands subject to the order of the court, and to file a bill of interpleader on the equity side of this court, making all the claimants of the fund parties defendant, and praying the relief asked in his answer to the garnishment.

I have filed this written opinion in order to set forth the reasons which induced me to adopt the mode of procedure which I have ordered in this case. The pleadings show that the garnishee, M. E. Carter, has in his hands funds which are claimed under separate and distinct titles by the contending parties in these proceedings. He claims no individual interest in the fund, and there is no allegation or suggestion that he had knowledge of, or in any manner participated in, the fraud alleged against the defendant Pettyjohn; and he has offered to bring the money into court, or to hold the same, and pay it over to the parties who may be adjudged to be entitled. The plaintiffs claim a legal lien on the fund acquired by their proceedings in attachment against the property of the defendant Pettyjohn, and they aver that they are able to show that he is insolvent, and that his attempted disposition of the same for the benefit of his wife is fraudulent, as it was done with the intent to hinder and delay his creditors. The interpleader Louisa B. Pettyjohn insists that the fund in controversy came into the hands of the garnishee under the power of attorney of Joseph Pettyjohn, and was the insurance money due upon her separate interest in the hotel; and that the garnishee received the money under an express trust that he would pay over the same to her trustee, A. S. Pannell, for her sole and separate benefit.

The claim of the plaintiffs is legal; that of the interpleaders is equitable. In such a case there can be no interpleader properly awarded and determined at law in this court, where equitable titles and rights can only be heard and disposed of under its jurisdiction in chancery.

The principles of law and equity which I have briefly announced are fully sustained by 2 Story, Eq. Jur. § 813, and by many decisions of

the United States supreme court. The course which I have adopted will enable the court of equity to fully hear and determine the rights of the contesting claimants, and to afford the garnishee the relief to which he may be entitled under his bill of interpleader